Woodrow W. RUNYON, Sr., Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 26, 1965.

Rehearing Denied Oct. 1, 1965.

Jean L. Auxier, Pikeville, for appellant.

Robert Matthews, Atty. Gen., J. T. Frankenberger, Asst. Atty. Gen., Frankfort, for appellee.

STEWART, Judge.

Appellant, Woodrow W. Runyon, Sr., was convicted in the Pike Circuit Court under an indictment charging him with submitting a false claim to the Pike County Board of Education. See KRS 434.240. He was given one year in the penitentiary. It is from this conviction and his subsequent sentence that he appeals. The grounds urged for reversal of the judgment are:

1. No public offense was charged: (a) KRS 434.240 does not apply because a school district is not a political subdivision of the state; and (b) the indictment does not charge the offense defined by the statute.

2. There was a variance between the allegations of the indictment and the proof.

3. The procedure followed by the Commonwealth denied him his state and federal rights to a speedy trial.

4. He has been subjected to double jeopardy by the herein conviction.

We shall answer each of these questions in the order presented.

Up until the approximate time the indictments hereinafter mentioned were returned by the grand jury, appellant was the supervisor of school buses for the Pike County Board of Education. One of his duties as such was to purchase parts for the repair of the buses owned and operated by the Board and to submit claims therefor to it for approval and payment.

At a date not set forth in the record, he began the practice of submitting false claims from a nonexistent auto-parts firm by the name of "Curtis Auto Parts" at Williamson, West Virginia. He would present the false invoice to the Board and it would approve it. He would then write the word "hold" on this invoice, thus instructing the finance officer of the Board (who mailed out the Board's checks) to hold the check for appellant to personally pick up. He would then obtain the check and deposit it in the First National Bank of Williamson, West Virginia, under the fictitious name of "T. C. Curtis, Curtis Auto Parts." One spurious invoice dated June 4, 1963, was for $452.25 and it is this transaction that is the basis for the indictment and conviction involved in this appeal. This particular invoice and a check for the amount mentioned were not held to be picked up later by appellant but were mistakenly mailed by the finance officer to "Curtis Auto Parts" at Williamson, West Virginia. The envelope and its contents came back stamped, "Addressee Unknown," and subsequent investigation carried out by the Board unfolded appellant's numerous alleged fraudulent acts.

On January 9, 1963, appellant was indicted by the grand jury for embezzling $18,178.01, this being the total amount he is accused of abstracting from the Board. He entered a plea of not guilty on January 14th. After a general continuance the case was set for trial on June 17, 1963. At some time before June 15th, the grand jury returned thirty-two indictments against him for submitting false claims "to the Pike County Board of Education, a political sub-division of the Commonwealth of Kentucky."

On June 15th the Commonwealth's attorney filed a motion to dismiss the embezzlement indictment for the reason that the thirty-two false-claim indictments covered the same money alleged to have been embezzled; and that the offenses of submitting false claims, not the offense of embezzlement, were the alleged crimes for which he should be tried. On June 17th the circuit judge overruled this motion and, over the strenuous objections of the Commonwealth's attorney, proceeded to trial on the embezzlement charge. The Commonwealth's attorney refused to prosecute under this charge and introduced no evidence. Also, no evidence was introduced on behalf of appellant. The jury, after being instructed, retired and came back with a not-guilty verdict.

In November of 1963 Runyon was tried on one of the thirty-two indictments for submitting a false claim, namely, the one mentioned above involving $452.25, and was convicted.

 Appellant's contention that KRS 434.240 does not apply because, as claimed, the Pike County school district is not a political subdivision of the Commonwealth of Kentucky, is refuted by both the statutory and the case law of this state. We need only set forth brief statements from some of the authorities in order to settle this issue definitely. KRS 61.420(5), in defining a political subdivision, states that it includes "counties, municipal corporations, and school districts." The case of Board of Education of City of Corbin v. City of Corbin, 301 Ky. 686, 192 S.W.2d 951, 952, states as follows: "Although some of the independent districts are coterminous with cities of the Commonwealth, each is a municipality or *political subdivision* separate and distinct from such a city." (Emphasis added.) Board of Education of Louisville v. Society of Alumni of L.M.H.S., Inc., Ky., 239 S.W.2d 931, makes this relevant statement: "In

this state public education has long been recognized as a function of state government, and members of boards of education have been held to be state officers." See also City of Louisville et al. v. Board of Education of Louisville, 302 Ky. 647, 195 S.W.2d 291, and City of Louisville v. Commonwealth, 134 Ky. 488, 121 S.W. 411.

Thus, the only conclusion possible is that the Pike County school district is a political subdivision of this state, the members of which are state officers, and it follows that the indictment drawn under KRS 434.240 did charge a public offense.

As a subdivision of his first point appellant also maintains the indictment is defective because it fails to allege a specific intent to commit the crime. KRS 434.240 denounces three things in connection with any claim made against the state or any political subdivision thereof: (a) Making a false and fraudulent statement of an account; (b) fraudulently omitting to make a true statement of an account; and (c) altering a statement after it has been accurately made. This statute then says, in part, there must be a fraudulent intent: First, "to conceal the true condition of the account;" or secondly, "to acquit any person of such an account;" or thirdly, "to obtain or to enable any other person to obtain money or other movable thing of value from the state or any political subdivision of the state when the person was not entitled to the money or any other movable thing of value."

In this case the gravamen of the crime purportedly committed was the falsification of a claim against a political subdivision. The indictment in substance averred that appellant submitted "a false claim in the sum of $452.25 and, as a result, caused the Pike County Board of Education to pay that amount."

The indictment, pursuant to RCr 6.10 (3), "shall state" the particular statute under which the indictment was drawn, but an error in or omission of the citation relied upon is not a ground for dismissal of the indictment or reversal of a conviction, unless such error or omission misleads a defendant prejudicially. Subsection 1 of this Rule states that "the caption shall be a part of the indictment." Under subsection 2 of the same Rule an indictment is sufficient if it contains a "plain, concise and definite statement of the essential facts" that constitute the particular offense "with which the defendant is charged."

As the purpose of an indictment is to apprise the accused, with reasonable certainty, of the offense charged, it seems clear that such was done here. Under the provisions of RCr 6.10, which we have noted above in detail, it becomes unnecessary to restate all the technical requisites of the crime of which a defendant is accused, if the language of the indictment, coupled with the applicable statute, unmistakably accomplishes this end result.

Appellant next asserts there is a variance between the allegations of the indictment and the evidence introduced. He maintains that, whereas the indictment avers the claim he submitted caused the Board to "pay the sum of $452.25 to said Curtis Auto Parts," the Commonwealth's own proof reveals the Board made no actual outlay of money on this claim. A reading of KRS 434.240, the statute under which appellant was indicted, will disclose that the actual receiving of the money by the perpetrator of the act is not an element of the offense of submitting a false claim. The alleged criminal act, in the case at bar, was the submission of a false account to the Board. It was unnecessary to cash in on the fraud, which was attempted but foiled, in order to make the crime complete. The case of Braswell v. Commonwealth, Ky., 339 S.W.2d 637, states: "Generally, a variance between the indictment and the proof is not regarded as material unless it misleads the accused in making his defense or exposes him to danger of a second conviction of the same offense." Appellant does not contend in the present case that he was misled by

the indictment to the extent that he was unable to resort to the proper measures to protect himself. We conclude this point is groundless.

Appellant's next complaint is that he was denied a speedy trial, and thus there was a violation of the right guaranteed him in this respect by the Sixth Amendment to the Constitution of the United States and Section 11 of the Constitution of Kentucky. The record discloses the indictment was returned in June of 1963 and appellant's trial was in November of 1963. This Court has held that a man indicted in May, 1954, and tried in November, 1955, was not deprived of the benefit of a speedy trial. See Clark v. Commonwealth, Ky., 293 S.W.2d 465. Jones v. Commonwealth, 114 Ky. 599, 71 S.W. 643, relied upon by appellant is distinguishable from the present case.

Appellant's final contention is that he has been put in double jeopardy by his conviction of the offense in this case. He, in effect, argues that his acquittal under the embezzlement indictment is a bar to this action. In Moss v. Jones, Ky., 352 S.W.2d 557, 558, this Court defined double jeopardy in this concise manner: "In plain language, the doctrine is that a person may not be tried or prosecuted the second time for the same offense." Braswell v. Commonwealth, Ky., 339 S.W.2d 637, 638, said: "The 'same offense' within the constitutional meaning does not signify the same offense by name or designation but has been defined as the same criminal act or omission." In Easley v. Commonwealth, Ky., 320 S.W.2d 778, 779, this statement appears: "The test to determine whether the acts committed at the same time and place constitute one or more offenses is, if proof of what is set out in the second indictment made on the trial of the first indictment would sustain it, then the two indictments are for the same offense. If what is set out in the second indictment when proved upon the trial of the first will not sustain it, then they are distinct offenses, and the conviction or acquittal of either is not a bar to the other."

We have heretofore detailed the main ingredients which constitute the offense of falsifying a claim against a political subdivision. Embezzlement, simply stated, is a fraudulent conversion of personal property after its possession has been lawfully acquired. See Roberson's New Kentucky Criminal Law and Procedure (2nd Ed.) sec. 897, p. 1117. See also subsections 1 and 2 of KRS 434.220. Both falsifying a claim against a political subdivision and embezzlement are statutory offenses. It is readily apparent different elements make up each crime.

Applying the principles of law to the facts in this case, we are of the opinion that embezzlement and submitting a false claim to a political subdivision are separate offenses. If the elements of the latter were established at the embezzlement trial, they would not sustain the embezzlement charge, hence an acquittal under an indictment for either would not be a bar to an indictment for the other.

Wherefore, the judgment is affirmed.